# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**PHILLIP ARNOLD,**

      **Petitioner,**

**v.**                         **Case No. 3:15cv540-MCR/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On November 30, 2015, under the mailbox rule, Petitioner, Phillip Arnold, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent filed an answer on August 26, 2016. ECF No. 11. Petitioner filed a reply on November 12, 2016. ECF No. 14.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by superseding indictment filed on September 22, 2010, in Escambia County, Florida, with the July 5, 2010, first-degree premeditated murder of Angela Castella Brown and the premeditated or felony murder of her unborn infant "Baby Boy Brown." Ex. A at 3-4.[1] Jury trial was held on August 15, 18, and 19, 2011, and Petitioner was found guilty of second-degree murder of Angela Castella Brown and that he carried or used a weapon, and guilty of first-degree felony murder of Baby Boy Brown. Ex. A at 277. Petitioner was sentenced to life in prison on both counts to run concurrently. Ex. A at 293-301.

Petitioner appealed to the state First District Court of Appeal, Exs. C, D, E, which affirmed per curiam without opinion on February 8, 2013. Ex. F. The mandate was issued on February 26, 2013.[2] Ex. G. *See* Arnold v.

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through M submitted in conjunction with Respondent's answer. *See* ECF No. 11.

[2] Claims raised on direct appeal were: (1) the first-degree felony murder conviction for Baby Boy Brown is unsustainable because there was no evidence that the baby had any brain activity or existence independent of the mother; (2) trial court erred in denying defense instruction on whether the baby was "born alive" and could breathe independently; (3) trial court erred in overruling objections to testimony of survival of

State, 144 So. 3d 542 (Fla. 1st DCA 2013) (table).  On March 7, 2014,

Petitioner filed a petition for writ of habeas corpus in the state court alleging

ineffective assistance of appellate counsel, Ex. H, which was denied on the

merits on March 26, 2014.[3]  Ex. I.  *See* Arnold v. State, 135 So. 3d 505

(Fla. 1st DCA 2014) (mem.).

Petitioner filed a motion for post-conviction relief pursuant to Florida

Rule of Criminal Procedure 3.850 on August 22, 2013, Ex. J at 1, which

was later amended several times, finally resulting in the amended motion

filed September 22, 2014.[4]  Ex. J at 93.  The post-conviction court denied

the motion on May 7, 2015, without an evidentiary hearing.  Ex. J at 128-

36.  Petitioner appealed and filed an initial brief, raising one ground:

---

other premature infants, resulting in confusion and prejudice; and (4) trial court erred in admitting two photographs of the deceased infant, which were irrelevant and caused prejudice.  Ex. C.

[3] The claim raised in the petition alleging ineffective assistance of appellate counsel was: Appellate counsel was ineffective for failing to argue fundamental error in the trial court's deviation from the standard Allen charge, Fla. Std. Jury Inst. (Crim.) 4.1, Jury Deadlock, thus violating state and federal constitutional rights to a fair trial and impartial jury.  Ex. H.

[4] The claims raised in amended Rule 3.850 motion were: (1) ineffective assistance of trial counsel (IAC) by counsel's failing to object to or move to strike evidence of double-hearsay statements of non-testifying witnesses, which evidence denied Petitioner a fair trial and due process; (2) IAC in failing to investigate and obtain expert testimony concerning Petitioner's heart condition and intoxication to support self-defense and the reasonable belief that deadly force was necessary, and failing to call a witness to rebut the testimony of the medical examiner; (3) IAC by failure to object to the modified Allen charge; and (4) IAC by failing to object  to and request a mistrial for reference to Petitioner's post-arrest silence.  Ex. J at 93-124.

Whether the post-conviction court erred in denying, without an evidentiary hearing, the claim that trial counsel was ineffective for failing to consult or obtain a medical or forensic expert to further Petitioner's defense of self-defense. Ex. K. The appellate court affirmed per curiam without opinion on October 30, 2015, and the mandate was issued on November 25, 2015. Exs. L, M. *See* Arnold v. State, 177 So. 3d 609 (Fla. 1st DCA 2015) (table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following ground for relief:

> Trial counsel rendered ineffective assistance by failing to present expert witnesses to support Petitioner's only defense of self-defense. ECF No. 1 at 5.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances. Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law

claim." <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998) (quoting <u>Anderson v. Harless</u>, 459 U.S. 4, 5-6 (1982)). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 457 (11th Cir. 2015) (quoting <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Pinholster</u>, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). *See also* <u>Swarthout v. Cooke</u>, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at

694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  Strickland, 466 U.S. at 697.

## Ground 1: Failure to Present Experts

The evidence presented at trial showed that Petitioner and the victim were longtime acquaintances.  On the day of the charged offenses, the victim's cousin saw Petitioner at a local convenience store.  Ex. B at 186 (transcript pagination).  He testified that Petitioner tried to flag down the victim to get a ride back to the trailer park where they both lived but she

drove by.  *Id.* at 187.  The witness heard Petitioner state, "I'm going to kill the bitch."  *Id.* at 187-88.  Petitioner's cousin also testified that he heard the comment from Petitioner when the victim drove by without stopping.  Ex. B at 204.  Another of the victim's cousins testified that he lived in one of the trailers located in a compound of trailers connected by walkways where the victim lived with her boyfriend and children.  Ex. B at 209-10.  On the day of the incident, he was in his trailer where Petitioner was also staying.  He heard Petitioner say "he was going to kill him somebody."  Petitioner then left.  *Id.* at 213.  Thirty or forty minutes later, the witness saw the victim lying on the floor of her trailer.  *Id.* at 214-16.

The victim's boyfriend testified that when he got home from work that day, the victim was in the kitchen and Petitioner was there sitting in a chair. *Id.* at 222.  The boyfriend left to go watch television in another room and about ten minutes later, the victim came in holding her chest, and saying, "Phillip just stabbed me."  *Id.* at 224.  An ambulance happened to be at the trailer park for another resident and the injury was reported to them by her boyfriend.  *Id.* at 225.  When he came back inside, he saw that Angela Brown had slipped from a chair onto the floor.  *Id.* at 227.  Her boyfriend attempted to do CPR and was especially concerned because she was pregnant, a fact he said was also known by Petitioner.  *Id.*  The victim's

boyfriend described her as being feisty and sometimes aggressive.  Ex. B at 233-35.  He testified that when she was using cocaine, however, she was not aggressive and she never attacked him.  *Id.* at 236-37.  After the stabbing, Petitioner left the trailer and ran close by the ambulance that was there and into a brushy areas.  Ex. B at 248.  He did not ask for medical assistance from the ambulance personnel.

Petitioner's nephew testified that Petitioner came to his house and was trying to call 911 on his cell phone.  Ex. B at 254.  His nephew had to dial it for him.  Petitioner told his nephew, "They are looking for me.  I done stabbed Angie," or "I stabbed that girl."  *Id.* at 254-55.  Medical personnel arrived at the scene of the stabbing and performed CPR and other assistance on the victim, and continued those efforts all the way to the hospital, even after the victim showed no pulse response, due to her pregnancy.  Ex. B at 278.

Law enforcement searched the area in the vicinity of the trailers and found Petitioner, who was "hollering" at them, saying he was the person they were looking for.  *Id.* at 283.  A search of the area disclosed a knife in some weeds by the road where Petitioner later testified he had thrown it.[5] *Id.* at 289, 502.  Petitioner was also taken to the hospital, but when the

---

[5] The parties stipulated that the blood on the knife belonged to the victim.  Ex. B at 318.

officer was asked if Petitioner had nitroglycerin pills on him, the State's objection based on the scope of direct examination was sustained. Ex. B at 335-37. When Petitioner later testified in the defense case, he told the jury that he had a bad heart, high blood pressure, and high cholesterol. *Id.* at 489.

A neonatal nurse practitioner testified that when the victim was brought into the emergency room, she was immediately given an emergency C-section to remove Baby Boy Brown.[6] *Id.* at 339-40. The baby was intubated because he was not showing respiratory efforts and he had a slow heart beat which subsequently normalized after medication. *Id.* at 346-48. The neonatal physician testified that the baby was delivered by C-section at 9:35 p.m. and died at 5:05 a.m. the next morning. Ex. B at 368. Baby Boy Brown was between 22 and 24 weeks gestation. *Id.* at 373.

The medical examiner testified that the infant had no specific cause of death, but died as a result of the complications of a premature delivery. Ex. B at 419. She also testified that Angela Brown died as a result of a stab wound in her chest that penetrated through her heart and into the

---

[6] The deceased infant was also referred to as "Angel Chambers." Ex. B at 404.

surface of her left lung. *Id.* at 412-14, 416. The wound was oriented from front to back, from right to left, and slightly downwards. *Id.* at 414.

Petitioner testified in his defense that he had known Angela Brown for 25 or 30 years. Ex. B at 466. He testified that the day before the incident, the victim asked him for money to buy something for her children. *Id.* at 467. He let her borrow his debit card and told her not to spend all the money on the card. Ex. B at 469. She did spend all the money available on the card, which he learned the next day when he tried to use it for a purchase. *Id.* When he was at the convenience store later that day, he saw the victim driving by and tried to flag her down. *Id.* at 470. He testified that when he said he was going to kill her, he was not serious. *Id.* at 472.

When Petitioner got back to the trailers, he heard the victim in the kitchen washing dishes. *Id.* at 475. He went there to confront her about his debit card while she was at the sink. He testified he walked over to the sink to talk to her and asked her why she spent all the money on his debit card. *Id.* at 478. He testified that when he told her it showed insufficient funds when he tried to use it, she said, "I played you." Ex. B at 379. He said she threatened to "play" him again, to which he responded, "That's just like you bitches and whores." *Id.* Petitioner testified:

> When she was washing the dishes and such, she was putting
> [the knives] over there on the counter. And there was knives in

> the sink.  And she said, "What you want to do about it?"  And she got up the knife up.  She - - left hand.  She grabbed a knife from over here.  And I'm right.  And I reached at the knives and I grabbed one.  When she was coming - - when she came around, she kind of turned with the knife.  That's when I stabbed her.

Ex. B at 480.  He testified he was scared because "I knew she was gonna stab me with it."  *Id.* at 481.  He agreed that she never touched him.  Ex. B at 502.  He said his first thought was "Ugh. . . .  I said, I've messed around and stabbed her."  *Id.* at 482.  He testified that he left because he was scared and his plan was to go somewhere and call 911.  *Id.* at 486-87. Petitioner admitted that when he ran away, he saw an ambulance but did not ask for any help for her.  *Id.* at 504.  He did, however, run to a neighbor's house to call 911 and he admitted to stabbing Angela Brown. Ex. B at 509.

The defense presented a toxicologist who testified that testing of Angela Brown's blood showed recent ingestion of cocaine.  Ex. B at 525-27.  He also testified that cocaine is a stimulant, and that a trigger such as a confrontation can in some people result in behavior different from what would be their normal response to such a situation.  *Id.* at 522, 531, 534. He could not say, however, that the victim's cocaine use altered her behavior.  *Id.* at 532.

Petitioner contends that trial counsel rendered ineffective assistance by failing to investigate and obtain experts to testify to facts and opinions would have supported his defense of self-defense. ECF No. 1 at 5. An expanded version of this claim was raised in his amended Rule 3.850 motion in the state court and denied without a hearing. Ex. J at 109-10, 107-12, 128-36. The state First District Court affirmed denial of relief. Ex. L. Respondent contends that the claim in this court is insufficiently pled, conclusory, partially a pure issue of state law, and is without merit. ECF No. 11 at 7.

Although the claim as set forth in his petition in this court lacks specificity, he did allege in his Rule 3.850 motion that "an expert in human conduct and behavioral responses" could have testified that his medical condition and medication affected his perception of the situation and caused him to react to the victim's movement with an "anxiety attack." Ex. J at 109. He also alleged that a forensic expert could have given an opinion that configuration of the stab wound showed he was retreating when it was delivered. *Id.* at 109-10. In this court, Petitioner provided similar detail in his reply. ECF No. 14. Notwithstanding any conclusory and speculative nature of the claim stated in the § 2254 petition, it lacks merit and should be denied.

Petitioner contended in the post-conviction court that trial counsel should have presented an expert to testify how his heart condition and medication affected his perception of the situation and timing of his reaction. He contended that an expert could show that his medication caused a fast pulse and caused him to react with anxiety and neurosis when the victim became aggressive. Ex. J at 109-10. He also contended in the state court that his counsel should have called a forensic expert to testify that the angle of the stab wound demonstrated he was retreating when he stabbed the victim. *Id.* He argued that this evidence would have supported his self-defense theory that he was justified in using deadly force because the effects of his medication and medical condition caused him to reasonably believe the stabbing was necessary to prevent his imminent death or great bodily harm. *See* § 776.012(2), Fla. Stat. (2010). The post-conviction court denied the claim, stating:

> The standard to be applied for determining whether a person is justified in using deadly force in self-defense is not a subjective standard as to a defendant's state of mind, but an objective standard as to a reasonably prudent person's state of mind. *See* Chaffin v. State, 121 So. 3d 608 (Fla. 4th DCA 2013). That standard requires the finder of fact to determine whether, based on circumstances as they appeared to the defendant at the time, a reasonable, prudent person situated in the same circumstances and knowing what the defendant knew, would have used the same force. *See* Toledo v. State, 452 So. 2d 661, 663 (Fla. 3d DCA 1984).

At trial, Defendant testified that the victim was standing at a kitchen sink washing dishes when he got into a verbal altercation with [the victim] over some money that she had allegedly stolen from him:

> When she was washing the dishes and such, she was putting them over there on the counter. And there was knives [sic] in the sink. And she said, "What you want to do about it?" And she got up [sic] the knife up. She – left hand. She grabbed a knife from over there. And I'm right. And I reached at the knives and I grabbed one. When she was coming – when she came around, she kind of turned with the knife. That's when I stabbed her.

Defendant further testified that, "I knew she was gonna stab me and I stabbed her . . . I was scared."

The medical examiner testified that the victim was age 44, approximately 5'6," 145 pounds and 22-24 weeks pregnant. Defendant, at 5'6," 164 pounds and age 65, might not have had a great physical advantage over her. However, he never testified that the victim lunged at him with the knife or that she had said she was going to stab or hurt him. She simply turned, with a knife in her hand. (As noted by the prosecutor at trial, she was washing the knives at the time). The medical examiner testified that the stab wound in the victim's chest was nearly five inches deep and went all the way through her heart. The jury was not persuaded that Defendant acted in self-defense.

> . . . .

Moreover, because self-defense must be considered from an objective standpoint, the influence of Defendant's medications on his reaction at that particular time was irrelevant. Defendant was able to testify about his heart problems, and the defense argued to an extent that his medical condition was a factor in his actions. Nevertheless, any further testimony about Defendant's health or medications would not have provided the basis for a meritorious self-defense argument. Therefore, counsel was not deficient for failing to call an expert to testify about Defendant's medical issues . . . .

Finally, the medical examiner also testified about the angle of the stab wound. It is difficult to imagine how that angle could be indicative of Defendant "retreating" from the victim's movements. By his own account, he was not retreating at all. The Court does not find that counsel was deficient for failing to call an expert to testify about the angle of the wound. As explained *supra*, the self-defense argument was very weak. Any further expert testimony would not have changed the outcome of the proceedings. Accordingly, Defendant is not entitled to relief on this claim.

Ex. J at 131-33 (transcript references omitted). Based on the evidence that was presented, the jury did not find that Petitioner was acting in self-defense when he stabbed the victim, but found he had no premeditated intent to murder her. The jury found Petitioner guilty of second-degree murder of Angela Brown, which under section 782.04(2), Florida Statutes (2010), requires no intent to kill, but only an act imminently dangerous to another and evincing a depraved mind, with indifference to human life.

The post-conviction court concluded that Petitioner's self-defense claim was weak and that, in light of the testimony at trial, he failed to show a reasonable probability that but for counsel's alleged error in failing to present such experts, the jury would have reached a different result. The post-conviction court also noted that Petitioner confirmed to the court at trial that he was satisfied with the services of his attorneys, and there was nothing that he wanted them to do that they had not done. Ex. J at 133

(referring to Ex. B at 544). The state appellate court affirmed denial of relief. Ex. L.

The post-conviction court was correct that under Florida law, justifiable use of deadly force is not measured by a subjective standard as to the defendant's state of mind, "but concerns a reasonably prudent person's state of mind." <u>Chaffin v. State</u>, 121 So. 3d 608, 612 (Fla. 4th DCA 2013) (quoting <u>Reimel v. State</u>, 532 So. 2d 16, 18 (Fla. 5th DCA 1988)). To make a prima facie case of self-defense, a defendant must demonstrate a "real necessity for taking a life and a situation causing a reasonably prudent person to believe the danger is imminent." <u>Dunn v. State</u>, 206 So. 3d 802, 805 (Fla. 1st DCA 2016) (quoting <u>Rasley v. State</u>, 878 So. 2d 473, 476 (Fla. 1st DCA 2004) (quoting <u>Hunter v. State</u>, 687 So. 2d 277, 278 (Fla. 5th DCA 1997))). Even if counsel had presented experts to testify that his medication caused him to have an elevated heart rate and anxiety, that is a subjective matter, not the objective standard required under Florida law. The post-conviction court reasonably determined that Petitioner did not demonstrate that, but for the alleged error of counsel in failing to present that evidence, there is a reasonable probability that the jury would have found he acted in self-defense under the standard set forth in Florida law.

Further, Petitioner's contention that an expert could have testified that the stab wound showed he was retreating also lacks merit. Petitioner contended in the post-conviction court that a pathologist would have "concluded that the angle of the stab wound on the victim was consistent with the standing position of Arnold as he stabbed retreating from the victim's movements in self-defense." Ex. J at 110. There was no dispute that Petitioner was standing when he stabbed the victim. He testified to that fact. Ex. B at 480-81. Moreover, as the post-conviction court noted, "By his own account, he was not retreating at all." Ex. J at 133.

Even if the pathologist disagreed with the depth of the wound or the angle of it, Petitioner does not explain how the pathologist could equate the shape or angle of the wound with evidence of self-defense or retreat. The evidence of the medical examiner was that the wound was slightly downward and deep enough to penetrate through the heart and enter the covering of the lung behind the heart. The heart and lung photographs were entered into evidence to support this testimony. Ex. B at 387, 411-14. Assuming an expert could be presented to express disagreement with the medical examiner, Petitioner has not demonstrated a reasonable probability that a jury would reject the testimony of the medical examiner

and conclude based on the disputed features of the wound that Petitioner acted in self-defense.

As the post-conviction court noted, the evidence showed that the victim was washing dishes as well as some knives, and that she turned toward Petitioner while holding a knife. There was no evidence of aggression on her part. Petitioner did not testify that he attempted to retreat. Evidence was presented, however, that Petitioner was angry at the victim for spending all the money on his debit card and had been heard stating that he would like to kill her and he was going to kill someone. Thus, Petitioner has not demonstrated that the post-conviction court's adjudication of this claim, in light of Florida law and the evidence presented at trial, was unreasonable.

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,

concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). Petitioner has failed to show counsel's representation in this case fell into the category of "extreme malfunctions" which § 2254 is intended to guard against. *Id.* at 102. Based on the evidence presented at trial, Petitioner has failed to show that the post-conviction court's ruling, and the affirmance by the state appellate court, were "so lacking in justification" that there was no "possibility of fairminded disagreement." *See* Richter, 562 U.S. at 103.

The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This is especially true where the claim is one of ineffective assistance of counsel, to which a "doubly deferential judicial review" applies when the claim is evaluated under the § 2254(d)(1) standard. Mirzayance, 556 U.S. at 123. Under Strickland, trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 17 (2013) (quoting <u>Strickland</u>, 466 U.S. at 690).

Petitioner has failed to demonstrate that the state court adjudication of this claim was incorrect or unreasonable. He has not demonstrated that the adjudication is contrary to or an unreasonable application of <u>Strickland</u>, or any other federal law as determined by the Supreme Court. On the evidence presented in the state court proceedings, he has not demonstrated that the state court adjudication was an unreasonable determination of the facts. Habeas relief on this ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Phillip Arnold is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

     **IN CHAMBERS** at Tallahassee, Florida, on August 9, 2017.


              **s/ Charles A. Stampelos**     
              **CHARLES A. STAMPELOS**
              **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

     **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.**